IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Irvin H. Kropp, Jr. and ) | Bankruptcy No. 12-26050-CMB |
| Sheila A. Kropp f/k/a Sheila A. Barnhart, ) | |
| ) | Chapter 7 |
| Debtors, ) | |
| ) | Adversary No. 13-02105-CMB |
| ) | |
| Michael Kropp and Annette Kropp, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| Irvin H. Kropp, Jr. and ) | |
| Sheila A. Kropp f/k/a Sheila A. Barnhart, ) | |
| ) | |
| Defendants. ) | |

*Appearances:* Charles O. Zebley, Jr. Esq. for Debtor-Defendants, Irvin H. Kropp, Jr. and Sheila A. Kropp f/k/a Sheila A. Barnhart
Patrick H. Mahady, Esq. for Plaintiffs, Michael Kropp and Annette Kropp

## **MEMORANDUM OPINION**

The matter before the Court is the *Complaint to Determine Dischargeability* ("Complaint") filed by Michael Kropp and Annette Kropp ("Plaintiffs"), to determine dischargeability of any and all debts owed to Plaintiffs pursuant to 11 U.S.C. §523(a)(2)(A) and (a)(4). Plaintiffs contend that Debtors committed fraud and/or made false representations in accordance with §523(a)(2)(A) and/or engaged in fraud while acting in a fiduciary capacity as

proscribed by §523(a)(4) in connection with an installment land contract executed by the parties. Accordingly, Plaintiffs seek a finding of nondischargeability by this Court.[1]

## FINDINGS OF FACT

Debtor-Defendant, Irvin H. Kropp, Jr. ("Irvin"), is the record-owner of a parcel of property located in Upper Tyrone Township, Fayette County, Pennsylvania ("Premises"). In approximately June 2005, Plaintiff, Michael Kropp ("Michael"), approached Irvin, Michael's father, about purchasing the Premises. Pursuant to the initial conversation, the parties agreed upon a purchase price of twenty-five thousand dollars ($25,000.00) with seven-thousand dollars ($7,000.00) paid up front and the balance to be paid at a rate of two-hundred dollars ($200.00) a month thereafter. At trial, Irvin credibly testified that during this conversation, he told Michael that there were existing mortgages on the Premises and that he would transfer the deed to the Premises to Plaintiffs when Irvin paid the mortgages off. Further testimony revealed that Irvin's existing mortgages were through Beneficial.

Shortly following the parties' conversation, Michael hired an attorney, Mark Rowan, Esq., to draft an installment land contract to memorialize the parties' agreement ("Installment Land Contract"). Contained within the Installment Land Contract were provisions requiring conveyance of the Premises free of all liens and encumbrances and that any liens in existence at the time of conveyance be approved in writing by Buyer-Plaintiffs. (See Installment Land Contract, ¶¶5, 12). Plaintiffs aver that these provisions required Debtors to obtain permission from Plaintiffs prior to refinancing and/or mortgaging the Premises.

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(I), and the Court will enter final judgment. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2593 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

On or about August 24, 2005, the parties executed the Installment Land Contract. Irvin credibly testified that Michael contacted Irvin and informed him that Michael had some papers drawn up relative to the sale of the Premises that both Irvin and Irvin's wife, Debtor-Defendant, Sheila A. Kropp ("Sheila") would have to sign. Irvin and Sheila went to Attorney Rowan's office and executed the Installment Land Contract. Irvin further credibly testified that he neither understood the Installment Land Contract nor was represented by an attorney. Sheila credibly testified that although she was not a record-owner of the Premises, she signed the Installment Land Contract because Attorney Rowan told her that as Irvin's wife her signature was necessary. Sheila was also not represented by an attorney.

Prior to execution of the Installment Land Contract, Plaintiffs, with their children, began occupying the Premises in approximately June 2005 or shortly thereafter. On or about May 2, 2007, Irvin refinanced his existing Beneficial mortgages with Wells Fargo. Sheila was neither a party to the prior mortgages with Beneficial, nor the refinancing agreements with Wells Fargo. At trial, Irvin testified that the purpose of the refinancing was to shorten the duration of the mortgage and obtain a lower interest rate and further, that Michael was aware of the refinancing as Michael was present when the appraiser conducted his review of the Premises in advance of execution of the refinancing agreement. This Court finds Irvin's testimony credible.

In June 2012, two months before the end of the Installment Land Contract term scheduled for August 2012, Plaintiffs desired to pay off the remaining balance owed under the Installment Land Contract and have title to the Premises transferred into their names. Per his testimony, Michael contacted Attorney Rowan who sent Debtors a letter to which Debtors responded they were unable to close due to the outstanding mortgages. Michael consulted another attorney, William J. Wiker, Esq., who renewed Plaintiffs' request to close by letter dated September 7,

2012. Again, Debtors indicated by letter dated September 12, 2012 that they were unable to convey marketable title. Irvin credibly testified that although he could not transfer title at the time, that he, Irvin, offered to keep making the mortgage payments until satisfaction thereof, but Michael rejected this offer.

In response to Debtors inability to convey free and clear title, Plaintiffs filed a complaint for specific performance in the Court of Common Pleas of Fayette County, Pennsylvania. Litigation in said action was stayed by the filing of the underlying bankruptcy case on December 12, 2012. Plaintiffs commenced the within adversary proceeding on March 21, 2013 by filing their Complaint, the subject of the instant Memorandum Opinion.

## APPLICABLE STANDARDS

The underlying intent of the Bankruptcy Code is to afford honest but unfortunate debtors "relief 'from the weight of oppressive indebtedness and provide them with a fresh start.'" *Gaussa v. Crawford (In re Crawford),* 476 B.R. 890, 894 (Bankr.W.D.Pa.2012)(*quoting Insurance Co. of N. Am. v. Cohn (In re Cohn),* 54 F.3d 1108, 1113 (3d Cir.1995)). As such, exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor. *Id.* However, discharge is not guaranteed as the "honest but unfortunate" requirement seeks to ensure that a "deceitful debtor does not benefit from his or her own fraud." *In re Crawford,* 476 B.R. at 894 (*quoting Corso v. Walker (In re Walker)*, 439 B.R. 854, 859 (Bankr.W.D.Pa.2010)(citations omitted)). In actions brought under §523, the creditor bears the burden of proof by the preponderance of the evidence. *In re Crawford,* 476 B.R. at 895 (*citing Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991))

4

§523(a)(2)(A)

Keeping in line with this intent, 11 U.S.C. §523(a)(2)(A), denies a discharge of a debt incurred "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by. . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

In the within matter, Plaintiffs aver that Debtors induced the Plaintiffs to enter into the Installment Land Contract by false representation(s) and/or fraud under §523(a)(2)(A). This Court has previously discussed the differences in evaluating false representation and fraud pursuant §523(a)(2)(A) in *In re Crawford*, *supra*. Although not set forth in its entirety, this Court incorporates the *Crawford* analysis herein.

A review of *Crawford* reveals that a central component to establishing either false representations and/or actual fraud under §523(a)(2)(A) is intent. Specific to this matter, allegations of false representations pursuant to §523(a)(2)(A) require Plaintiffs to show that Debtors induced Plaintiffs to enter the Installment Land Contract by making a misrepresentation "with the intention and purpose of deceiving the [Plaintiffs]." *In re Crawford*, 476 B.R. at 895 (citations omitted). To establish actual fraud, Plaintiffs must show that at the time Debtors entered into the Installment Land Contract with Paintiffs, Debtors had no intention of satisfying their contractual obligations. *Giansante & Cobb, LLC v. Singh (In re Singh)*, 433 B.R. 139, 163 (Bankr. E.D. Pa. 2010); *See also Mance v. Kaltenbock (In re Kaltenbock)*, 12-02358-CMB, 2013 WL 3225077(Bankr.W.D.Pa. June 25, 2013) at *1. Without such requirement, "every breach of contract would give rise to a nondischargeability claim under §523(a)(2)(A)." *In re Singh*, 433 B.R. at 163 (*citing In re Harrison*, 301 B.R. 849, 854 (Bankr.N.D.Ohio 2003); *See also Sherry Justice Sales, LLC v. Hawkins (In re Hawkins),* 463 B.R. 768, 774 (Bankr.W.D.Pa.2012).

The Court applies a subjective approach when examining whether a debtor had the requisite fraudulent intent at the time the debt was incurred. *Id.* "Intent to deceive may be established based on the facts and circumstances of an individual case and may be inferred when the facts and circumstances present a picture of deceptive conduct on the part of the Debtor." *In re Hawkins*, 463 B.R. at 773 (*citing In re Bruce*, 262 B.R. 632 (Bankr.W.D.Pa.2001)).

In the instance that a §523 action is brought against married co-debtors, this Court has previously stated that, for purposes of nondischargeability, the fraudulent acts or practices of one spouse are not automatically imputed to the other spouse. *Rose v. Davis (In re Davis)*, 476 B.R. 191, 199 (Bankr.W.D.Pa.2012)(citations omitted).

§523(a)(4)

In addition to §523(a)(2)(A), Plaintiffs contend that a determination of nondischargeability should be found pursuant to 11 U.S.C. §523(a)(4). Section 523(a)(4) excepts from discharge, debts incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." In the within matter, Plaintiffs allegations are limited to fraud or defalcation while acting in a fiduciary capacity.

Under § 523(a)(4), when a creditor alleges either fraud or defalcation, the creditor must also establish that the Debtor was acting in a fiduciary capacity. *In re Crawford*, 476 B.R. at 897. Plaintiffs aver that the Installment Land Contract created a fiduciary relationship between the parties. However, in the context of bankruptcy proceedings, "fiduciary" is more narrowly defined than under common law, "as an individual may qualify as a fiduciary under state law but not for purposes of the dischargeability exception." *In re Davis*, 476 B.R. at 195 (*citing Subich v. Verrone (In re Verrone)*, 277 B.R. 66, 71-72 (Bankr.W.D.Pa.2002)).

6

In *In re Davis, supra*, this Court examined the requirements for creating a fiduciary relationship for the purposes of nondischargeability pursuant to §523(a)(4). In *Davis*, this Court ultimately concluded that "[t]o be a fiduciary for dischargeability purposes, the debtor must be a trustee under an 'express' or 'technical' trust. 'Constructive and *ex maleficio* trusts do not qualify.'" *In re Davis,* 476 B.R. at 195 (*citing In re Verrone*, 277 B.R. at 72).

In order to establish that an express or technical trust existed between Debtors and Plaintiffs, the Plaintiffs must prove by a preponderance of the evidence that there was: "(a) an express intention to create a trust; (b) an ascertainable *res*; (c) a sufficiently certain beneficiary; and (d) a trustee who owns and administers the *res* for the benefit of the beneficiary." *In re Davis,* 476 B.R. at 196 (*citing In re Verrone*, 277 B.R. at 72); See also *Brockway Pressed Metals, Inc. v. Eynon Assocs*. (*In re Brockway Pressed Metals, Inc.*), 363 B.R. 431, 440 (Bankr.W.D.Pa.2007). Accordingly, to satisfy the first prong, Plaintiffs must have shown that the Debtors either expressly signified their intention at the outset of the transaction or must have been clearly put on notice by some document in existence that they were undertaking the special responsibilities of a trustee. *In re Davis*, 476 B.R. at 197(citations omitted).

## DISCUSSION

With the above standards in mind, the Court now turns to whether the debt owed to Plaintiffs is nondischargeable under §523(a)(2)(A) and/or (a)(4). The Court will first analyze Plaintiffs' claims pursuant to §523(a)(2)(A).

Upon review of the within matter, this Court finds that the Plaintiffs failed to prove by a preponderance of the evidence that the Debtors induced the Plaintiffs to enter into the Installment Land Contract by actual fraud pursuant to 11 U.S.C. §523(a)(2)(A). Specifically, Plaintiffs

7

failed to show that Debtors had no intention of satisfying the contractual obligations at the time the Installment Land Contract was executed as is required to establish actual fraud under §523(a)(2)(A). *In re Singh*, 433 B.R. at 163 (*citing In re Harrison*, 301 B.R. at 854); See also *In re Hawkins,* 463 B.R. at 774. Moreover, Plaintiffs also failed to show that Debtors acted fraudulently at any point thereafter.

At trial, Irvin credibly testified that at no point pursuant to the transaction did he intend to deceive Plaintiffs. This contention is supported by Irvin's credible testimony that he informed Michael of the existing mortgages on the Premises at the outset of the transaction and that he proceeded throughout the formation, execution, and term of the Installment Land Contract based on his belief that Michael had full knowledge of said mortgages. Further, Irvin believed that Michael understood that Irvin would convey title after paying off the mortgages. Irvin's credible testimony that he offered to continue paying the mortgage after the expiration of the Installment Land Contract term and Plaintiffs' demand to convey, bolsters not only this particular averment, but also the assertion that Debtors never intended to defraud Plaintiffs by not completing the transaction, generally.

With respect to the clauses contained within the Installment Land Contract mandating conveyance of free and clear title and prohibition of lien encumbrance absent consent of the Plaintiffs, Irvin credibly testified that he did not understand the Installment Land Contract, believed that title issues were reviewed by Michael and Attorney Rowan, and that he signed because Michael, his son, instructed him to do so. Further, even if Debtors understood that they were prohibited from encumbering title to the Premises, Irvin credibly stated that he believed that Michael was aware of Irvin's refinancing of the existing mortgages with Wells Fargo in May 2007. Moreover, both Irvin's and Sheila's testimony regarding Irvin's motivations for the

refinancing, to reduce the term and interest rate of the mortgages to allow Irvin to pay off the mortgages and transfer title faster, demonstrate an absence of fraudulent intent. Accordingly, Plaintiffs failed to show that the Debtors committed fraud pursuant to 11 U.S.C. §523(a)(2)(A).

Similarly, Plaintiffs also failed to prove by a preponderance of the evidence that Debtors induced the Plaintiffs to enter the Installment Land Contract by false representations pursuant to §523(a)(2)(A). Plaintiffs failed to show that the Debtors made a misrepresentation "with the intention and purpose deceiving [Plaintiffs]." *In re Crawford*, 476 B.R. at 895 (citations omitted). As set forth above, Plaintiffs failed to prove that Debtors did not intend to satisfy the contractual obligations at the time the Installment Land Contract was executed or any at any point thereafter. Thus, Plaintiffs cannot show that Debtors possessed the requisite intent to defraud Plaintiffs as required by §523(a)(2)(A). Therefore, discharge of Debtors' obligation to Plaintiffs will not be denied under 11 U.S.C. §523(a)(2)(A).

Next, the Court turns to Plaintiffs' claims that the Debtors committed either fraud or defalcation while acting in a fiduciary capacity under §523(a)(4). Plaintiffs failed to present any credible evidence that Debtors intended to create a trust by entering into the Installment Land Contract as is required to establish a fiduciary relationship for nondischargeability purposes pursuant to §523(a)(4). *In re Davis,* 476 B.R. at 196 (*citing In re Verrone*, 277 B.R. at 72); *In re Brockway Pressed Metals, Inc.*, 363 B.R. at 440. Specifically, no credible evidence was presented establishing that Debtors expressly indicated their intention or were put on notice by a document in existence that entering into the Installment Land Contract would confer special responsibilities of a trustee unto Debtors. Moreover, Plaintiffs have failed to point to any case-law establishing that an installment land contract creates a de facto fiduciary relationship between the executing parties. Thus, the first requisite element of a fiduciary relationship is

9

unsatisfied and further analysis of the remaining elements is unnecessary. Due to Plaintiffs' failure to show that a fiduciary relationship existed, Plaintiffs cannot succeed in their argument and the issue of whether fraud or defalcation occurred is unnecessary. Nonetheless, this Court notes that the record of the within matter does not support a finding of fraud or defalcation as contemplated by §523(a)(4).

Finally, even if Plaintiffs could have established that Debtor, Irvin H. Kropp, Jr., committed actions supporting a finding of nondischargeability under §523(a)(2) and/or (a)(4), Plaintiffs have failed to show that such determination could be found with respect to Debtor, Sheila A. Kropp. As set forth above, this Court has previously stated that, for purposes of nondischargeability, the fraudulent acts or practices of one spouse are not automatically imputed to the other spouse.[2] *In re Davis,* 476 B.R. at 199 (citations omitted). Thus, in order to be denied a discharge, the Plaintiffs must have shown by a preponderance of the evidence that Sheila, herself, made false representations and/or committed fraud actionable under §523(a)(2) and/or (a)(4). At trial, Sheila credibly testified that at no point in time did she have an ownership interest in the Premises, nor was she a party to any of the mortgages secured thereto. Sheila further testified that none of her personal bills were paid with the funds received pursuant to the

---

[2] The Court notes that in *Planitiffs' Brief in Support of Complaint to Determine Dischargeability*, Plaintiffs cite to *In re Luce,* 960 F.2d 1277(5th Cir.1992), to support their argument that any fraudulent action committed by Irvin could be imputed onto Shelia. In *In re Luce*, the court found a debtor-wife could be denied a discharge for her codebtor-husband's actions where he committed fraudulent acts while acting on behalf of the couple's partnerships. However, not only is the instant action distinguishable from *In re Luce,* as there is no partner/agency relationship, but subsequent case-law has disputed this conclusion. See *In re Davis,* supra.; *In re Nascarella*, 492 B.R. 327, 340 (Bankr. M.D. Fla. 2013)(finding that *In re Luce* misconstrues [*Centruary First National Bank of Pinellas County v. Holwerda (In re Holwerda)*, 29 B.R. 486(Bankr.M.D.Fl. 1983)] upon which it relies for its position that a "debt is nondischargeable '[i]f the debtor benefits in some way' from the money, property, services or credit obtained through deception.").

10

refinancing of the Premises. Moreover, Sheila did not participate in the negotiation of the terms of the transaction between Irvin and Plaintiffs and only signed the Installment Land Contract due to the insistence of Michael and/or his attorney, for purposes of preventing any issues regarding marital rights acquired by Sheila upon her marriage to Irvin. Based on her lack of involvement in negotiating the agreement between Irvin and Michael and/or the terms of the Installment Land Contract, as well as the Plaintiffs' failure to identify a specific representation made by, or attributable to, Sheila at trial, the Plaintiffs have not only failed to show that Sheila made a single representation which induced the Plaintiffs to enter into the Installment Land Contract, but further, that such representation, if made, was fraudulent. Additionally, even if the refinancing of the mortgages were found to be a fraudulent act under either §523(a)(2) and/or (a)(4), as a non-party to either the Beneficial or Wells Fargo mortgages, such action could not be attributed to Sheila. As a result, any debt owed to Plaintiffs by Debtor, Sheila A. Kropp, is dischargeable.

## CONCLUSION

For the foregoing reasons, Plaintiffs' *Complaint to Determine Dischargeability* is denied as the Plaintiffs failed to demonstrate by a preponderance of the evidence that the Debtors committed fraud or made false representations actionable under 11 U.S.C. §523(a)(2)(A) or (a)(4), and/or that the Debtors were acting in fiduciary capacity as contemplated by §523(a)(4). Accordingly, any debt owed by Debtors to Plaintiffs is dischargeable. An appropriate Order will be entered consistent with this Memorandum Opinion.

Dated: December 18, 2013                    /s/ Carlota M. Böhm
                                                                                    Carlota M. Böhm
                                                                                    United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
Patrick H. Mahady, Esq.
Charles O. Zebley, Jr., Esq.

FILED
12/18/13 9:47 am
CLERK
U.S. BANKRUPTCY
COURT - PGH